AUSTIN E. PRENTICE, AS COUNTY TREASURER, ETC., RESPOND-
ENT, *v.* ABIJAH WESTON AND OTHERS, APPELLANTS.

*Collection of taxes in Lewis county — chap. 153 of 1884, as amended by chapter 215
of 1885 and chapter 102 of 1886, does not violate section 16 of article 3 or sections 5
or 6 of article 1 of the Constitution — the action is a civil action and should be
brought by the county treasurer.*

Chapter 153 of 1884, entitled "An act to enforce the collection of taxes levied in the
county of Lewis," as amended by chapter 215 of 1885 and chapter 102 of 1886,
provides that from and after its passage it should not be lawful for the owners
of any land in the county of Lewis, upon which taxes have been assessed and
remain unpaid and due, to peel bark or cut timber upon such land, or to permit
others to perform such work; and that any such owner violating the provisions
of the act should be liable, upon conviction, to a fine of $500 for each and every
offense; that, upon the sworn statement of such violation delivered or forwarded
by the supervisor or one of the justices of the town in which the same was com-
mitted to the county treasurer, it should "be the duty of said treasurer to cause
parties implicated in said sworn statement to be prosecuted, and to recover the

penalty imposed by this section." Power was conferred by the act upon the county treasurer to employ counsel and to pay all necessary disbursements and fees in the prosecution of such action out of any moneys in his hands not otherwise appropriated, and charge the same against the town in which the offense was committed, to which the penalties were directed to be paid by the county treasurer after deducting five per cent allowed to him for his services in recovering them.

*Held,* that, as the provision contained in the act providing a penalty for cutting timber and peeling bark was fairly and directly connected with the general object for which the act was passed, as indicated by its title, and provided measures to secure the accomplishment of the subject or purpose mentioned therein, it did not violate the provisions contained in section 16 of article 3 of the Constitution, providing that no private or local bill shall embrace more than one subject, which shall be expressed in the title.

Nor did it violate the provisions of either section 5 or section 6 of article 1 of the Constitution.

That actions to recover the penalties imposed by the act for peeling bark or cutting timber were civil actions which should be brought by the county treasurer of Lewis county, and not by the supervisor of the town where the illegal act was committed.

APPEAL from an interlocutory judgment, entered upon an order overruling a demurrer interposed to the complaint.

*V. P. Abbott,* for the appellants.

*C. S. Mereness,* for the respondent.

MARTIN, J.:

This is an appeal from an interlocutory judgment overruling defendant's demurrer to the complaint herein. The grounds of the demurrer were: "First. That it appears upon the face of the said complaint that the plaintiff has not legal capacity to sue, because the statute upon which the action is brought confers no power upon the plaintiff to bring such an action in his own name. Second. That the said complaint does not state facts sufficient to constitute a cause of action."

Upon the argument the defendants claimed that their demurrer should have been sustained for the reasons: First. That the action cannot be maintained in the name of the plaintiff; that if maintainable, it must be brought in the name of the supervisor of the town of Diana. Second. That the statute does not create any right that can be enforced by a civil action; that the only remedy given

is by a criminal proceeding. Third. That the statute under which this action was brought is unconstitutional. No other defects in the complaint were claimed or pointed out; therefore, no other questions need be considered.

Anterior to the passage of the statute under which this action was brought, the system for the collection of taxes which prevails generally in the State prevailed in the county of Lewis. By that system the State takes upon itself the burden and risk of collecting the unpaid taxes. In 1884 the legislature passed an act (chap. 153 ) which in effect modified or changed the general statutes upon this subject so far as the county of Lewis was concerned. By this statute the county was to pay the whole of its State tax, and the unpaid taxes were to be collected by the county treasurer instead of by the officers of the State. This statute, as amended by chapter 215, Laws of 1885 and chapter 102, Laws of 1886, after making provisions as to the manner of collecting these unpaid taxes provides :

"Section 17. From and after the passage of this act it shall not be lawful for the owners of any land in the county of Lewis, upon which taxes have been assessed and remain unpaid and due at the office of the comptroller of the State, or at the office of the treasurer of the said county, and the same remain unpaid, to peel bark or cut timber upon such land, or permit others to perform such work, and any such owner violating the provisions of this section shall be liable upon conviction to a fine of $500 for each and every offense, and upon sworn statement of such violation delivered or forwarded by the supervisor or one of the justices of the town in which the same is committed to the county treasurer, it shall be the duty of said treasurer to cause parties implicated in said sworn statement to be prosecuted, and to recover the penalty imposed by this section. In all such actions the treasurer shall have power to employ counsel and to pay all necessary disbursements and fees in the prosecution of such action out of any moneys in his hands not otherwise appropriated, and such disbursements and fees so paid shall be chargeable against the town to whom the penalty shall be paid in case of recovery."

"Section 18. The amount of penalties recovered by the treasurer in pursuance of the provisions of section seventeen of this act shall be credited by said treasurer to the towns in which the offenses were

committed, respectively, after deducting therefrom five per centum, which is hereby allowed to said treasurer for his services in the recovery of said penalties. If the defendant shall recover judgment againsts the plaintiff in any action brought for the above penalties the amount thereof shall be a charge against the town for whose benefit the action was brought, and be paid by the same."

It is upon the foregoing statute that the plaintiff relies for authority to maintain this action. The action is for penalties imposed for peeling bark or cutting timber upon land situated in Lewis county upon which taxes had been assessed and remained unpaid and due at the office of the comptroller of the State or at the office of the treasurer of said county.

First, then, can this action be maintained in the plaintiff's name. The defendants contended that section 1926 of the Code of Civil Procedure requires such an action to be brought in the name of the supervisor of the town. That section, so far as applicable to this question, in effect provides, that an action may be maintained by the supervisor of a town to recover a penalty or forfeiture given to the town represented by him. If the statute making the acts complained of penal, has not provided that the penalties imposed may be collected otherwise than by an action in the name of the supervisor, then there may be force in this contention. But we think it has. It makes it the duty of the county treasurer to cause the parties implicated to be prosecuted and to recover the penalty imposed. He is empowered to employ counsel and pay necessary fees and disbursements. He must credit the money received to the town in which the offense was committed. He may deduct five per centum for his services in recovering such penalties. If the judgment is adverse, it is to be charged to the town. These provisions are inconsistent with the claim that the action is to be brought by the supervisor or in his name. We think, if a civil action can be maintained, the intent of this statute was that it should be brought in the name of the treasurer of the county.

Can a civil action for the recovery of these penalties be maintained, or is the only remedy by a criminal action. "A criminal action is prosecuted by the people of the State as a party, against a person charged with a public offense, for the punishment thereof." (Code Civil Pro., § 3336.) "Every other action is a civil action."

(Sec. 3337.) The statute under consideration· as we have already seen provides, in express terms, that the treasurer shall cause the action for these penalties to be prosecuted. They are not to be prosecuted in behalf of the people, but for the benefit of the town. The action is not for the punishment of a public offense, but to recover a penalty to be paid to a town. A consideration of the provisions of this statute leads us to the conclusion that a civil action for the recovery of these penalties, brought in the name of the treasurer of the county is proper.

This leads us to the consideration of the question of the constitutionality of this statute. Its constitutionality, at least so far as it provides a penalty for cutting timber and peeling bark, is challenged upon the ground that it is within the inhibition of section 16 of article 3 of the Constitution of this State. This section provides : "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." An act is local within the meaning of the Constitution which, in its subjects, relates but to a portion of the people of the State or to their property, and may not, either in its subject, operation or immediate and necessary results, affect the people of the State or their property in general. (*People* v. *The Supervisors of Chautauqua County*, 43 N. Y., 11, 21; *Kerrigan* v. *Force*, 68 id., 381, 383.) That the act under consideration is a local act within this definition is manifest. It is confined in its operations to the county of Lewis. It has no relation to the collection of taxes elsewhere. Hence, it becomes important to determine whether this act embraces more than the one subject which is expressed in its title. The defendants claim that it does. They claim that it not only provides for the enforcement of the collection of the unpaid taxes in that county. but also creates a penalty for peeling bark or cutting timber on lands upon which an unpaid tax has been levied, and that these provisions comprise more than one subject.

The Constitution does not require that the title of an act should specify all its provisions. Every detail of a bill which affects private or local interests is not required to be set out in the title or made the subject of a separate act. If the details are fairly embraced in the subject which is mentioned in the title, the constitutional provision relied upon is complied with. (*Sun Insurance*

*Co.* v. *Mayor, etc.,* 8 N. Y. 241, 253; *Litchfield* v. *Vernon,* 41 id., 123, 139; *The People ex rel. Davies* v. *The Commissioners of Taxes of New York,* 47 id., 501, 505; *Matter of Astor,* 50 id., 363, 367; *Tifft* v. *The City of Buffalo,* 82 id., 204.) . The legislature is not subject to judicial control in respect to the form or mode in which the subject of a bill shall be expressed. If it is expressed the Constitution is satisfied. (*The People ex rel. Commissioners, etc.,* v. *Banks,* 67 N. Y., 568.)

It seems to be a settled rule of construction that when such an act expresses in its title the general object for which it was passed, that all matters fairly and reasonably connected with it and all measures which will or may facilitate its accomplishment are proper to be incorporated in the act and are germain to the title. (*Matter of Knaust,* 101 N. Y., 189, 194.)

An applicition of these principles to the question before us leads to the conclusion that the statute under consideration embraces only the one snbject which is expressed in its title. This statute was entitled " An act to enforce the collection of taxes levied in the county of Lewis." The obvious purpose and effect of section 17, was to prevent persons owning lands situated in that county from avoiding the payment of their taxes. It was to prevent them from destroying the value of the lands upon which they had not paid their taxes by removing the timber and bark and thus rendering them valueless or'of insufficient value to satisfy the taxes due thereon. Its object was to render the collection of the taxes in that county more certain. The purpose of this provision is, we think, fairly and directly connected with the general object for which this statute was passed as indicated by its title. It provides measures to secure the accomplishment of the subject or purpose mentioned in the title of the act.

Nor do we think this statute violative of either section 5 or section 6 of article 1 of the Constitution of the State. If, as we think, this statute violates no constitutional provision, it is valid and must be. enforced. It cannot be pronounced invalid even if it violates our ideas of justice. (*Bertholf* v. *O'Reilly,* 74 N. Y., 516; *The People* v. *The Supervisors of Ulster County,* 36 Hun, 491.) If this statute is wrong the remedy is with the legislature and not with the courts.

The defendants' demurrer was properly overruled, and the interlocutory judgment appealed from should be affirmed with costs; but with leave to the defendants, on the payment of the costs included in such judgment and the costs of this appeal, to serve an answer herein. The costs to be paid and the answer served within twenty days after the service upon them of the order herein affirming such judgment.

HARDIN, P. J. and FOLLETT, J., concurred.

Interlocutory judgment overruling demurrer, affirmed with costs and leave given to the defendants to withdraw demurrer and answer in twenty days upon payment of the costs of the demurrer and of the appeal.