Jacob Friedman, as State Representative for Greater New York of the Code Authority for the Mason Contractors Division of the Construction Industry, Plaintiff, *v.* John Lowry, Inc., Defendant.

City Court of New York, New York County, January 4, 1935.

*Howard Henig*, for the plaintiff.

*Eidlitz, French & Sullivan*, for the defendant.

Noonan, J.  Plaintiff brings the action in his alleged capacity as State Representative for Greater New York of the Code Authority for the Mason Contractors Division of the Construction Industry, to recover from the defendant an assessment made by such Code Authority against the defendant in the sum of $3,000.

It is alleged that the action has been duly authorized by the Deputy Administrator for Industrial Recovery of the United States in charge of the supervision of the Code Authority for the Mason Contractors Division of the Construction Industry.

In January, 1934, the basic code of fair competition for. the construction industry was approved by the President of the United States, and in April, 1934, a certified copy of it was filed in the office of the Department of State of the State of New York, in

accordance with section 2 of chapter 781 of the Laws of 1933 of the State of New York, commonly known as the Schackno Act.

In April, 1934, chapter 8 of the said code relating to "Mason Contractors Division" was approved by the President, and in May, 1934, a certified copy of it was filed in the State Department of this State, as provided in the Schackno Act. In July, 1934, an amendment to chapter 8 of the said code was approved by the Administrator for Industrial Recovery of the United States, and in August, 1934, a certified copy thereof was filed in the State Department, in conformity with the provisions of the Schackno Act. This amendment to article 3 of the code provides as follows:

"Section 2. 1. It being found necessary in order to support the administration of this Code and to maintain the standards of fair competition established hereunder and to effectuate the policy of the Act, the Divisional Code Authority is authorized:

"(a) To incur such reasonable obligations as are necessary and proper for the foregoing purposes, and to meet such obligations out of funds which may be raised as hereinafter provided and which shall be held in trust for the purposes of the Code:

"(b) To submit to the Administrator for his approval, subject to such notice and opportunity to be heard as he may deem necessary, (1) an itemized budget of its estimated expenses for the foregoing purposes, and (2) an equitable basis upon which the funds necessary to support such budget shall be contributed by members of this Division:

"(c) After such budget and basis of contribution have been approved by the Administrator, to determine and obtain equitable contribution as above set forth by all members of this Division, and to that end, if necessary, to institute legal proceedings therefor in its own name.

"2. Each member of this Division shall pay his or its equitable contribution to the expenses of the maintenance of the Divisional Code Authority, determined as hereinabove provided, and subject to rules and regulations pertaining thereto issued by the Administrator. Only members of this Division complying with the Code and to the expenses of its administration as hereinabove provided (unless duly exempted from making such contribution) shall be entitled to participate in the selection of members of the Divisional Code Authority or to receive the benefits of any of its voluntary activities or to make use of any emblem or insignia of the National Recovery Administration."

In August, 1934, the budget and basis of assessment for the three months' period, beginning May 1, 1934, and ending July 31, 1934, and for a further consecutive period of two months ending

September 30, 1934, for the Mason Contractors Division of the Construction Industry, was approved by the Administrator for Industrial Recovery of the United States, and a copy of it, duly certified by the authorized officials, was filed in the office of the Department of State of the State of New York, in accordance with section 2 of the Schackno Act. The said budget and basis of contribution provided, in part, for assessment of persons, firms and corporations who have made a contract to perform work involving brick work, rubble stone, cinder block masonry, ornamental terra cotta, salt glazed tile, hollow tile and gypsum block, including the furnishing of any labor or materials incidental thereto. This budget and basis of assessment apportioned the assessment dependent upon the value of the contract. For a contract of $1,000 or more the assessment is made at the rate of $2.50 per $1,000 or fraction thereof of the contract value.

On May 1, 1934, the defendant entered into a contract which provided, in part, for the erection of certain brick work and other building material enumerated above, incident to the construction of a building at Radio City, New York city. The value of this contract is alleged to be $1,200,000, and, in accordance with the budget and assessment provisions and at the rate therein provided, it is claimed that the defendant is liable for an assessment in the sum of $3,000, the amount in suit.

The question is whether, upon the foregoing facts stated in the complaint, a cause of action is pleaded.

The Schackno Act is entitled, " An Act to provide for codes of fair competition for trades, industries and subdivisions thereof, agreements, licenses, rules and regulations pursuant to the provisions of the national industrial recovery act, enacted by the congress of the United States, effective June sixteenth, nineteen hundred thirty-three, as affecting intrastate commerce within the state."

Section 2 of the act provides that upon the filing in the office of the Department of State of a certified copy of a code of fair competition " pertaining, affecting or in any way relating to the conduct of business in the state," which has been adopted pursuant to the National Recovery Act, and which has been approved by the President of the United States, such code " shall be the standard of fair competition for such trade or industry or subdivision thereof in the state as to transactions intrastate in character." It is further provided that the violation of any provision thereof shall be a misdemeanor punishable by fine upon conviction.

The act further provides that if, by virtue of any such code, any person or group is given the power to subpoena witnesses

and to compel the production of books, papers and records, " a like power shall be deemed to have vested in such person or group of persons with regard to matters and things of a wholly intrastate character."

The act, in section 3 thereof, expressly confers upon the Supreme Court of the State of New York the power " to prevent and restrain violations of any code of fair competition * * * at the instance of any party whose interests are or may be adversely affected by such violations° or acts."

There is nothing in the complaint before the court to indicate that the defendant was engaged in interstate commerce, so that at the outset it must be assumed that whatever rights the plaintiff may have to enforce the assessment in suit are based upon the New York statute.

A construction of this statute is, therefore, necessarily presented.

The constitutionality of the Schackno Act will not be questioned. The act has been held to be constitutional by a statutory court (*Spielman Motor Sales Company, Inc.*, v. *Dodge*, 8 F. Supp. 437). In consonance with that decision it will be considered that the statute is not a delegation or abdication by the Legislature of this State of any of its powers. Nor will the view be taken that the statute is an attempt to legislate by reference to an act not incorporated therein, in violation of section 17 of article III of the Constitution of New York State (*Cline* v. *Consumers Co-operative Gas & Oil Co.*, 152 Misc. 653, 672; *People ex rel. Commissioners* v. *Banks*, 67 N. Y. 568, 575). Any question of constitutionality should be left to a court of appellate jurisdiction.

The question at hand will be confined to one of statutory construction. Is the plaintiff, by virtue of the provisions of the Schackno Act, vested with the cause of action which he seeks to maintain?

It must be noted that the plaintiff does not say that the defendant is liable for the assessment in suit by reason of any contractual obligation. It is not asserted that the defendant signed any code or agreement. To uphold his right to exact the assessment the plaintiff must establish that it is one given to him by law. The Schackno Act does not confer express power to levy the assessment. The plaintiff is left, therefore, to the contention that there is an implied statutory right in a code authority to enforce an assessment against a member of the industry who has not assented to the code of that industry.

Primary principles of statutory construction prohibit a court from reading into the Schackno Act any provision which is not to be found within its text.

New rights may not be created or new obligations imposed merely because it is believed that such rights and duties may tend to carry out the beneficent purposes of the statute.

The statute purports to " provide for codes of fair competition." Violations of these codes are declared to be misdemeanors. Jurisdiction is conferred upon the Supreme Court of the State to enjoin violations at the instance of any one adversely affected. But there is no power given to any person or group of persons, private or official, to levy an assessment or to maintain an action to recover it. Speculation is the only resource in the effort to ascertain the intention of the Legislature. A fair assumption would be that if the Legislature intended to convey the power sought to be exercised in this action, language would be employed, clear and unmistakeable, to denote the grant. The public emergency which gave birth to the enactment must be appreciated. The need of obtaining funds to make the code administration self-supporting and to aid in the effectuation of the policy intended, cannot fail to be recognized. But the danger of investing an individual or a group of individuals with rights unknown to the common law, and not conferred by statute, and of imposing correlative liabilities of a kind equally unknown to the law, common or statutory, must also be kept in mind, particularly when the person affected has not bound himself by contract to perform any such obligation. It is also to be remembered that the group of persons which claims these extraordinary powers, in a situation where no phase of interstate commerce is involved, is composed of private individuals somewhat remotely connected with Federal governmental agencies, and bearing no official relationship or actual responsibility to any department or branch of the State government.

If the foregoing views be correct, the complaint must be dismissed on the merits. It may also be said that the complaint is defective for failure to allege a compliance by the plaintiff with Administration Order No. X-36 of May 26, 1934. The amendment to chapter 8 of the code, annexed to the complaint, provides that the obligation of a member of the division to pay his contribution is subject to rules and regulations pertaining thereto, issued by the Administrator. Administration Order No. X-36 of May 26, 1934, contains certain conditions precedent, necessary to be complied with before an action may be commenced to recover from a member of an industry an " equitable contribution."

For the reasons stated, the motion is granted and the complaint is dismissed for failure to state a cause of action. Judgment may be entered accordingly.