In the Matter of Consolidated Edison Company of New York, Inc., Petitioner, against Frank C. Moore et al., Respondents.

Supreme Court, Special Term, Albany County, March 31, 1950.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Kent H. Brown* and *Edward J. Grogan, Jr.,* of counsel), for respondents.

*Travis H. Whitney* and *Edwin D. Kyle* for petitioner.

ELSWORTH, J. In this proceeding brought to review the determination of the respondent State Board of Equalization and Assessment in fixing the equalization rate applicable to petitioner's special franchise in the borough of Bronx, city of New York, for the tax year 1949–1950, there is raised the constitutionality of chapter 346 of the Laws of 1949 which created the said State Board of Equalization and Assessment.

Following a recital of " Legislative determinations " in justification of the act, the purposes of said chapter 346 of the Laws of 1949 are stated therein as follows: " to provide for prompt, effective and over-all review and revision of state equalization rates, and to provide for the study of the problem of permanently assigning functions dealing with assessment and taxation of real estate * * *." The act then states that the Legislature " determines that such objectives may best be accomplished by assigning to a temporary state commission certain of the functions, powers and duties of the state tax commission, the state board of equalization and the department of taxation and finance in relation to the assessment and taxation of real estate until such time as such review and revision of equalization rates has been completed and the legislature has received recommendations as to the permanent assignment of the functions, powers and duties transferred * * *."

The questions here raised flow from the respondents' motion to strike paragraphs Nos. 21, 22, 23 and 24 from the petition. The petitioner's contentions as asserted in said paragraphs and which must be herein passed on are grouped for discussion and determination as follows:

First. That chapter 346 of the Laws of 1949 creates a new " Department " in the State Government in violation of section 3 of article V of the State Constitution; that the State Board of Equalization and Assessment is not a " Temporary Commission for Special Purposes " within the meaning of section 3 of article V of the State Constitution because the functions, powers and duties devolved upon the board in connection with its special purposes are themselves neither temporary nor special, but are " permanent " administrative duties of the Department of Taxation and Finance.

Second. That the statute is vague and indefinite in its terms and leaves to the unrestricted judgment of administrative officers the matter of the determination of their powers, duties, jurisdiction and function, and as such constitutes an unlawful delegation of legislative power in violation of section 1 of article III of the State Constitution.

Third. That the act is in violation of section 16 of article III of the State Constitution in that it incorporates by reference the provisions of existing laws.

Fourth. That the appointment of State Comptroller Frank C. Moore, Chairman of the Board, as a member thereof, is in violation of section 1 of article V of the State Constitution, thus vitiating all official action taken by the Board.

Fifth. That the determination of the final equalized valuation herein complained of was made by a board other than that which determined the tentative equalized valuation (the State Tax Commission), and that thereby the petitioner was deprived of the judgment, knowledge, and experience of the members of the State Tax Commission to which it asserts it was entitled as a matter of due process of law.

Consideration of the petitioner's contentions set forth under " First " above requires at the outset an examination of section 3 of article V of the State Constitution. It provides as follows: " Subject to the limitations contained in this constitution, the legislature may from time to time assign by law new powers and functions to departments, officers, boards or commissions, and increase, modify or diminish their powers and functions. No new departments shall be created hereafter, but this shall not prevent the legislature from creating temporary commis-

sions for special purposes and nothing contained in this article shall prevent the legislature from reducing the number of departments as provided for in the article, by consolidation or otherwise.''

Disregarding for the moment the assignment by said chapter 346 of the Laws of 1949 of the jurisdiction, functions, powers and duties of the State Tax Commission, State Board of Equalization and Department of Taxation and Finance as therein made, the other expressed purposes to be carried out by the Board of Equalization and Assessment are clearly '' special purposes '' within constitutional meaning and the Board as created to carry out such purposes is clearly a ''temporary '' commission within constitutional meaning. The act itself designates the board as a '' *temporary* state commission ''. The very time limitation placed upon its existence, namely, to April 1, 1952, only, stamps it as temporary.

If, therefore, the petitioner's said contentions are to be upheld here, the basis thereof must be found to exist in the fact of the said assignment of the jurisdiction, functions, powers and duties of the State Tax Commission, State Board of Equalization and Department of Taxation and Finance. It may well be argued that this newly created board could have made a review and survey without such assignment of powers and functions. It also may well be argued that such review and survey could have been made by an already existing commission, board or department. Those are wholly irrelevant matters here. The wisdom of the enactment rested solely with the Legislature so long as it transgressed no constitutional inhibitions.

Section 2 of article V of the Constitution establishes nineteen civil departments in the State Government among them the Department of Taxation and Finance. Section 3 of article V of the Constitution, above quoted, provides that '' no new departments shall be created hereafter.'' Is this act by reason of its transfer and assignment of the specified functions, powers and duties of the Department of Taxation and Finance violative of these constitutional sections, or, phrased in another way, do these sections of the Constitution prohibit the Legislature from transferring to a temporary commission for special purposes powers and duties of a constitutional department in aid and furtherance of the work and purposes of that temporary commission? In support of the affirmative of the question so propounded the petitioner has cited and relies on the case of *People* v. *Tremaine* (252 N. Y. 27).

The issue in that case was the constitutionality of a statute creating the State Office Site and Building Commission as a so-called temporary commission for a special purpose and transferring to it certain of the duties of the Department of Public Works. The pertinent portion of the decision which the petitioner calls to its aid is wholly dictum. It is expressly so characterized in the court's opinion and goes only to the extent of stating that it is " questionable " whether a part of the duties of a constitutional department may be assigned to a special commission. In so stating it is proper to assume that the court had in mind and was speaking of the situation then before it as presented by the legislation under attack, and which bore no semblance of similarity to the situation presented by the instant statute. This court interprets the dictum observation to have been forcibly motivated by the following two statements made in the opinion: (1) " The legislative policy as indicated is to renew this distribution of powers from year to year so that the attribute of general *permanency* attaches thereto." (P. 51, Emphasis supplied); and (2) that nullification of the provisions of article V of the Constitution would result " if the Legislature might withdraw from the departments thereby created the functions assigned to them by law and confer them upon its own members." (P. 52.) Neither of those factors is present here nor claimed to be. The assignment of functions under the instant statute is a *temporary* one with no " attribute of  *  *  *  permanency ". Furthermore it is made to no member of the Legislature. Nothing is found in the decision of *People* v. *Tremaine* (*supra*) to warrant judicial condemnation of the legislation in question.

The specific power is granted to the Legislature by section 3 of article V of the Constitution to " increase, modify or diminish " the powers and functions of departments, boards or commissions. The challenged act neither abolishes a department nor creates a new one. It simply modifies or diminishes existing powers and functions and places such powers and functions temporarily with a " commission for special purposes ". Nothing is found, constitutionally or otherwise, which places such action beyond the pale of legislative prerogative.

Examination of chapter 346 of the Laws of 1949 fails to disclose that section 1 of article III of the State Constitution is violated as set forth under " Second " above, by reason of an unlawful delegation of legislative power. Section 3 of the act first provides in blanket terms for the transfer to the new board of *all* the jurisdiction, functions and powers of the State

Tax Commission, the State Board of Equalization and the Department of Taxation and Finance " pertaining to or connected with the assessment and taxation of real estate ". This language immediately follows: " including but not limited to the determination of the full and equalized valuation of special franchises, the determination of rates of equalization, the hearing and determination of appeals from acts or decisions of the board of supervisors of any county in the equalization of assessments and the correction of the assessment-rolls, the review of the equalization fixed by the board of supervisors of any county or other lawfully constituted authority, *the assessment of real estate owned by the state,* the *sales of land by county treasurers for unpaid taxes,* the *furnishing of valuations of public utilities* subject to the jurisdiction of the state department of public service, the investigation and examination as to the methods of assessing real estate for taxation, advising, assisting and directing officials charged by law with duties relating to the assessment of real estate for taxation, prescribing *the form of blanks, reports, assessment-rolls and other records relating to the assessment of real estate for taxation,* and the compilation and publication of statistics with respect thereto " (emphasis supplied).

It is charged that the statute as thus drafted is " so vague and indefinite in its specifications of what jurisdiction, functions, powers and duties are purportedly transferred, and what are not, as to leave it to the new State Board to determine, in its discretion (and perhaps with the concurrence of the three existing agencies) what the Legislature had in mind." In so asserting the petitioner ignores the fact that the functions, powers and duties assigned had long been performed by the three existing agencies. They appear to have been clearly defined and well delineated. The general description thereof buttressed as it is by the detailed specifications enumerated renders untenable any claim of unlawful delegation of legislative power by reason of ambiguity. In so determining, due consideration has been given to the specific claim of vagueness made by the petitioner under the last paragraph of section 3 of the act relating to the apportionment of taxes among counties under the certain articles of the Judiciary Law there enumerated.

As set forth under " Third " above, it is petitioner's claim that contrary to the provisions of section 16 of article III of the Constitution the act incorporates other statutes by reference and cites *Matter of Becker* v. *Eisner* (277 N. Y. 143) as controlling upon the proposition. Said section 16 of article

III is as follows: " No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act." [Formerly § 17. Renumbered by Constitutional Convention of 1938 and approved by vote of the people November 8, 1938.]

In *Curtin* v. *Barton* (139 N. Y. 505) the act under challenge established a Municipal Court in the city of Syracuse in place of courts presided over by justices of the peace and conferred upon it the same jurisdiction previously applicable to the Justices' Courts. The act was upheld as not being in violation of this Constitutional provision (then art. III, § 17), the court stating that the current of authority in the Court of Appeals had settled the question the other way, citing *People ex rel. Board of Commissioners* v. *Banks* (67 N. Y. 568); *People ex rel. New York Elec. Lines Co.* v. *Squire* (107 N. Y. 593), and *People ex rel. Everson* v. *Lorillard* (135 N. Y. 285).

In *Burke* v. *Kern* (287 N. Y. 203) a provision of the New York City Charter providing for the abolishment of the offices of Sheriff and Register in each of the five counties of the city and transferring practically all their duties and functions to newly created offices of City Sheriff and Register, was similarly under attack as being in violation of this constitutional provision (New York Const., art. III, § 16). There, also, the court upheld the validity of the questioned provisions, referring to *Curtin* v. *Barton* (*supra*) and saying (p. 214) that they " are similar to provisions invariably employed under like circumstances, which have been held valid by this court." In arriving at its determination, the court discussed *Matter of Becker* v. *Eisner* (*supra*) cited by the petitioner as here controlling, and distinguished the same in this clear and definite language: " Respondents rely upon *Matter of Becker* v. *Eisner* (277 N. Y. 143), but there the situation was different. The statute in the *Becker* case did not abolish any existing agency and transfer its powers to a newly-created agency. On the contrary, the statute attempted to make automatically applicable to a different agency, namely, the Board of Higher Education, all the laws then appliable and which might be enacted in the future with reference to another continuing agency, namely, the Board of Education. In the case at bar, on the other hand, as in *Curtin* v. *Barton* (139 N. Y. 505), *People ex rel. Board of Commissioners* v. *Banks* (67 N. Y. 568) and other like cases cited, the principle is made applicable that reference to procedure and

jurisdiction definitely established is not violative of the constitutional provision." (Pp. 214–215.)

It thus appears under well-established authority that the Legislature acted within the constitutional limitation here under consideration in transferring the powers, duties and functions in question to the new State Board of Equalization and Assessment and that it was not required to set forth or repeat in its enactment the precise terms of all statutes which confer the authority being transferred or to revise and amend each thereof in order to constitutionally effect the change.

It is next urged that the State Comptroller is prohibited from membership in the Board of Equalization and Assessment under the provisions of section 1 of article V of the Constitution (See " Fourth " above).

Said section 1 of article V, as amended in 1925 with respect to the Comptroller, provided that the Legislature shall define the Comptroller's powers and duties " but shall assign to him no administrative duties, excepting such as may be incidental to the performance of these functions." Said functions are: " (1) To audit all vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties."

Historically, it appears that prior to 1925, the Constitution did not prescribe the Comptroller's duties and by legislative action that officer had assigned to him many powers and duties which bore no relevancy to audit and fiscal control. To preserve therefore the Comptroller's independent status as to the auditor of all State fiscal matters it was considered advisable to take from him most of the administrative functions he then performed which were not consistent with those of audit and control, to prescribe his duties specifically in the Constitution and to incorporate therein the above-quoted restraint upon future legislation. This saw accomplishment with the adoption of the said 1925 amendment.

At first blush it might appear that this contention of the petitioner has merit. Due consideration and analyzation of the situation presented leads, however, to a contrary conclusion. This act can in no sense be construed as a subterfuge on the part of the Legislature to accomplish indirectly something which it could not attain directly. If it were it should be given short shrift here. (See *People ex rel. Burby* v. *Howland,* 155 N. Y. 270.) By the act, the Legislature created a board of three members to be appointed by the Governor and provided that

any public officer should be qualified for appointment thereto. It is this board which must carry out the duties and functions prescribed and not the members thereof individually. One appointed thereto who happens to be Comptroller, functions neither as Comptroller nor as an individual. He functions as a board member. There is, however, no existing inhibition, constitutionally or otherwise, against one occupying the office of Comptroller from performing other public services or from holding public office not incompatible with that of Comptroller. In spite of the statement in *Matter of Hennessey* v. *Moore* (273 App. Div. 177, 183) that the meaning of " ' incidental ' may be very broad or limited ", this court does not concur in the argument advanced by the respondents that the powers given under the act are within the meaning of " *incidental* " as used in section 1 of article V, and can for that reason, if for no other, validly be placed in the Comptroller. It does take the view, however, that such powers are not incompatible with the Comptroller's duties. The cases of *Matter of Richardson* (247 N. Y. 401) and *People* v. *Tremaine* (252 N. Y. 27, *supra*) cited by the petitioner upon this proposition of the propriety of the Comptroller's appointment, have been examined and nothing is found therein either to persuade or to justify any deviation from the views above expressed that the respondent Frank C. Moore's appointment was proper and that he may legally serve as a member of the board in question.

Petitioner's final contention is predicated upon the proposition that it was denied the hearing on grievance day to which it was constitutionally entitled. (See " Fifth " above.)

A hearing was had. It was conducted by a majority, namely two, of the three members of the State Board of Equalization and Assessment. The petitioner after appearing specially, submitted evidence in support of its complaint addressed to both valuation and rate of equalization. The board's final determination was made by all its members. Nothing is found in that procedure in deprivation of petitioner's rights.

Petitioner's further point in connection with the grievance day hearing is that its assessment having been made tentatively by the State Tax Commission, not alone on the evidence before it but also upon the personal knowledge, judgment and experience of the members thereof, it was entitled to the benefit of such personal knowledge, judgment and experience of the Tax Commission members at the time of the grievance day hearing. Approval of that proposition would necessitate a determination that the petitioner had acquired a vested interest in the

knowledge, judgment and experience of an administrative body, namely, the State Tax Commission, and there is no authority by which any such holding could be substantiated. To illustrate the weakness and fallacy of this asserted claim, it need only be pointed out that resignation, death or removal of the members of the Tax Commission prior to the 1949 grievance day would have left the petitioner in the very same position of which he now complains.

For the reasons stated and upon the conclusions reached herein, the respondents' motion to dismiss, strike and delete paragraphs 21, 22, 23 and 24 of the petition is granted.

Submit order.